# UNITED STATES DISTRICT COURT
for the
Middle District of Tennessee

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 25-mj-1376 |
| ALAN JAMES GREENMAN | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 20, 2025__ in the county of __Montgomery__ in the __Middle__ District of __Tennessee__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 242 | Deprivation of Rights Under Color of Law |
| 18 U.S.C. § 1201 | Kidnapping |

This criminal complaint is based on these facts:
SEE ATTACHED

☑ Continued on the attached sheet.

                                                    e-signed//Joy C. Wright
                                                    *Complainant's signature*

                                                    FBI Special Agent Joy C. Wright
                                                    *Printed name and title*

Sworn to me remotely by telephone, in compliance with Fed. R. Crim. P. 4.1.

Date: 09/05/2025

                                                    *Judge's signature*

City and state: Nashville, Tennessee                    U.S. Magistrate Judge Barbara D. Holmes
                                                                    *Printed name and title*

# STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT

I, Joy C. Wright, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been for over 20 years. Currently, I am assigned to the FBI's Clarksville Resident Agency, where I have been assigned since August 2024. My duties include, but are not limited to, the investigation of civil right criminal offenses including deprivation of rights under color of law and use of excessive force.

2. I make this statement in support of an application for an arrest warrant for ALAN JAMES GREENMAN. The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation including reviewing written reports, surveillance photographs, conducting interviews and having numerous conversations with other law enforcement officers.

3. Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by Special Agents of the FBI or other law enforcement officers. Unless otherwise noted, whenever I relay that a statement was made, the information was provided by a law enforcement officer or a civilian (who may have had either direct or hearsay knowledge of the statement) with whom I have spoken or whose report I have read. All statements related herein, whether of law enforcement officers or others are related in substance in part, unless otherwise indicated. Information resulting from surveillance sets forth either my personal observations or information provided directly or indirectly through other law enforcement officers who conducted such surveillance.

4. This affidavit is being submitted for the limited purposed of establishing probable cause in obtaining an arrest warrant. Therefore, I have not set forth each and every fact that I have learned during the course of this investigation, but just those sufficient to establish probable cause to believe that ALAN JAMES GREENMAN committed offenses in violation of Title 18, United States Code, Section 242, Deprivation of Rights Under Color of Law, and Title 18, United States Code, Section 1201, Kidnapping.

**PROBABLE CAUSE**

5. On August 21, 2025, I was made aware via local media that Clarksville Police Officer Alan James Greenman had been arrested by the Tennessee Bureau of Investigation (TBI) and charged with aggravated assault and kidnapping for an incident that occurred on August 20, 2025, during a domestic assault that occurred between Greenman and Female Victim (F.V.). TBI had taken over the investigation initiated by the Clarksville Police Department.

6. On August 25, 2025, I met with the investigating TBI agents and was provided a summary of their investigation to date as well as access to interviews and evidence they had gathered following the incident. TBI agents stated that during their investigation they had confirmed that Greenman was a patrolman for the Clarksville Police Department and had been in his full police uniform, driving his assigned patrol vehicle, used his service pistol during the domestic assault involving the F.V., and was scheduled to be on duty at the time of the incident.

7. I reviewed a report from the Computer Aided Dispatch (CAD) Browser for Greenman for the date of August 20, 2025. This report showed that Greenman started his shift at 5:38:10 a.m. Greenman was scheduled to work a 6:00 a.m. to 6:00 p.m. shift that day. The CAD

2

Case 3:25-mj-01376   Document 3   Filed 09/05/25   Page 3 of 9 PageID #: 5

location for Greenman was shown as Tiny Town Rd/Princeton Court at 6:41:00 a.m. F.V.'s residence is located off of Tiny Town Road.

8. Surveillance footage from F.V.'s apartment complex on the morning of August 20, 2025, captured Greenman entering F.V.'s apartment complex at 05:37:24 a.m., exiting the complex at 05:43:30 a.m., entering the complex again at 06:10:15 a.m., exiting the complex at 06:23:32 a.m., entering the complex again at 06:26:35 a.m., and departing again at 08:21:29 a.m. On each of the occasions when Greeman entered F.V.'s apartment complex and departed, he entered the complex in his patrol vehicle and using a gate code for the utility company to access the apartment complex, which would not have been available to the general public.

9. I reviewed a recording of the interview of F.V. on August 20, 2025, conducted by TBI agents, and I also conducted an interview of F.V. on August 28, 2025. F.V. stated that she arrived home at approximately 6:30 a.m. that morning. She had communicated with Greenman via cell telephone and text message that morning prior to arriving home, as she saw on her doorbell camera that he was at her residence. She and Greeman had been in a romantic relationship, but were in a "maintenance phase," which she explained meant that they were not together. F.V. had previously provided Greenman with a key to her residence but had asked for it to be returned, which Greenman did prior to August 20, 2025. F.V. did not want Greenman at her residence when she was not there, which she told him previously. That morning, after F.V. spoke with Greenman, he left her residence in his patrol vehicle. That morning at approximately 06:23:32 a.m. surveillance footage showed Greenman stopped at the front of F.V.'s apartment complex. At 06:25:53 a.m., F.V.'s vehicle entered her apartment complex, and Greeman followed F.V.'s

3

vehicle into the apartment complex at 06:26:35 a.m. Thereafter, he parked his patrol vehicle and followed F.V. into the home.

10. An argument between Greenman and F.V. began because he accused her of cheating and wanted to see her cell phone to determine if she was cheating on him. The argument started in the kitchen, and they ended up upstairs in her bedroom. While upstairs, Greenman took a screwdriver and stabbed the television on the wall of her bedroom multiple times. Prior to Greenman stabbing the television, F.V. told him to leave her home. She told him that "this isn't worth your job or mine." F.V. told Greenman that he was scaring her. She thought he was going to stab her. She described wrestling with Greenman for the phones while he was in his police uniform, including his Kevlar vest and other gear, and she was in fear. They fought over cell phones, including his cell phone, her personal cell phone, and her work cell phone. She described herself as hysterically crying and pleading with him not to break her personal cell phone and to give it back to her, as that was her only means of getting in touch with her kids. She also described begging him to leave. Greenman continued to scream at her and broke F.V.'s personal cell phone. They continued to scramble for the other phones once or twice, and when F.V. attempted to leave her bedroom, Greenman tossed her across the room onto the bed. She stated that he punched her multiple times in the head. During this whole time, F.V.'s four-year-old son was asleep in the room next door. Her other children had left for school.

11. F.V. stated that at one point when she tried to leave, Greenman pulled out his service weapon and pointed it at her. She described looking down the barrel of the gun. She stated that Greenman told her "I'm going to fucking kill you." She stated that she was begging for her life and begging for him to let her go. She told him that she had four kids, and he was going to

4

leave them without a mother.  At some point, Greenman re-holstered his weapon but F.V. was still not allowed to leave the bedroom. F.V. stated that Greeman said things like "I'm going to fucking kill you" and "I will shoot you if you leave."  F.V. was not allowed to leave and stated every time that she reached for the door Greenman told her he was going to hit her or kill her.  Greenman continued to break F.V.'s belongings including a gaming head set and a controller.

12. At one point, she grabbed her work cell phone and ran for the bedroom door.  She left the bedroom and went downstairs to get her son clothing, then went back upstairs, and grabbed her four-year-old son. Once she had her son, Greenman let her go.  She left the residence and went to a friend's home.  F.V. notified Greenman's chain of command at Clarksville Police Department, and they began to look for Greenman, eventually finding Greenman hiding under clothing in the closet of F.V.'s bedroom with his personally owned pistol.  When officers with the Clarksville Police Department located the Defendant was no longer in his police uniform.  Greenman was taken into custody.

13. I reviewed photos of F.V. taken by TBI agents at the time of her interview which show bruises consistent with her described injuries.

14. I reviewed the in-car camera footage from Greenman's patrol vehicle on the morning of August 20, 2025.  Other law enforcement officers explained to me that Clarksville Police Department has sensors on their duty holsters that activate their patrol vehicle in-car camera when a service weapon is drawn from its holster.  The in-car camera in Greenman's patrol vehicle began recording at 6:58 a.m. on August 20, 2025, indicating that the in-car camera received the signal that Greenman's service weapon was drawn at that time.  The in-car camera was pointed towards the front windshield of the vehicle that was parked in the driveway of F.V.'s residence

5

and therefore was recording the front of F.V.'s residence, including the front door. On this video, at 7:25 a.m., F.V. exited the front door of the residence holding her child in her arms and walked quickly away from the residence. At 8:14 a.m., the video showed Greenman in his uniform exiting the front door of the residence, crossed in front of the patrol vehicle, and entered the driver's side of the patrol vehicle. The in-car camera continued to record while Greenman drives his patrol vehicle from the residence.

15. After entering the vehicle, Greenman was recorded having a conversation with an unknown male. The conversation appeared to indicate that Greenman was contemplating suicide, and they were discussing financial matters in regard to his death. At one point during the conversation, Greenman expressed that he wished he didn't go through her (F.V.'s) phone and see anything and he wished he had never gone to her home that morning. He also stated, "Everything is way past being fixed because I broke all her shit, I broke all her shit, her phone. She was crying like crazy. I fucking attacked her multiple times, pulled a gun on her, like there's no coming back from any of this." At approximately 8:20 a.m., the in-car camera turned off.

16. I reviewed a copy of report titled "Evidence Audit Trail" which was provided by the Clarksville Police Department. This report details the audit of Greenman's in-car video that was taken on August 20, 2025. The report shows that the camera "started due to the Axon Signal Sidearm activation" at 6:58:41 a.m., while Greenman was on duty. The report shows that the video was ended at 8:20:48 a.m. "due to button press," which indicated the button was pressed by an occupant of the vehicle. Based on the video, Greenman appeared to be the only vehicle occupant of the patrol vehicle at that time. Once the video ended, the user "Greenman, Alan" accessed the video and added "NA" to the video metadata using the Axom Fleet Dashboard. The title of the

video was also updated from default to "NA" and the category "Non-Evidence" was added to the video metadata, which would shorten the retention period to two years instead the lifetime of any associated case.

17. I also reviewed an interview of Greenman conducted by TBI Agents upon his arrest on August 20, 2025. Greenman waived his *Miranda* rights. Greenman admitted to damaging the television with a screwdriver and snapping F.V.'s personal cellphone over his knee. Greenman admitted to shoving F.V. several times and placing his hand on his service pistol while stating, "Stay down or I'll kill you." Greenman stated that F.V. responded to him by saying "don't do that I have four kids" or something like that. Greenman stated he did not pull his service pistol out of the holster. This statement was inconsistent with the activation of in-car video taken from Greenman's patrol vehicle. Greenman confirmed that F.V. would have bruises on her arms where Greenman grabbed and pushed her.

18. Greenman explained that after he left F.V.'s residence, he went home, changed out of his uniform, and left his patrol vehicle at his residence. He left his duty weapon at his residence and claimed he returned to F.V.'s residence in an Uber to get some of his belongings. He was found by Clarksville Police Officers in the closet in F.V.'s bedroom. On his person was a personally owned Glock pistol.

19. Based upon the facts stated above, I believe there is probable cause to believe that on August 20, 2025 in the Middle District of Tennessee, ALAN JAMES GREENMAN, while dressed in his police uniform, driving his patrol vehicle, and using his duty weapon, willfully deprived F.V. of her constitutional rights granted by the Fourth Amendment by holding her at gun point and threatening to kill her, and with use and threat of physical violence, seized her person,

7

in violation of Title 18, United States Code, Section 242, and unlawfully seized, confined, and kidnapped F.V. or attempted to do so for reward or any other reason and in committing the offense or in furtherance of the commission of the offense, ALAN JAMES GREEMAN traveled in interstate commerce or used a means, facility, or instrumentality of interstate or foreign commerce, in violation of Title 18, United States Code, Section 1201.

## **CONCLUSION**

Based on the forgoing, I request that the Court issue the arrest warrant.